IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MEMPHIS IKAIKA KAMAKANI KUNTZ,<br><br>　　　　Defendant. | Case No. 1:23-cr-183<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

　　The United States of America, by Mac Schneider, United States Attorney for the District of North Dakota, and Brandi Sasse Russell, Assistant United States Attorney, has no objections to the Pre-Sentence Investigation Report ("PSR") in this case, however, the United States requests the Court impose an upward departure from the advisory Guidelines sentencing range as stated in the PSR in this case. (PSR ¶ 65)

　　Specifically, the United States requests the Court grant a two-level upward departure based upon USSG § 5K2.8 for extreme conduct due to defendant's unusually heinous, cruel, brutal or degrading conduct to the victim.

GUIDELINE CALCULATIONS

　　The PSR in this case determined a total adjusted offense level of 37, criminal history category I, and advisory Guidelines sentencing range of 210-262 months. (R. Doc. 131 – PSR ¶ 49) The United States requests the Court grant a two-level upward departure pursuant to USSG § 5K2.8 for a total offense level of 39, resulting in a guideline sentencing range of 262-327.

UNITED STATES OBJECTION TO USSG §§ 5H1.1, 5H1.3 and 5H1.4

The United States objects to Defendant's application of USSG §§ 5H1.1, 5H1.3, and 5H1.4 to impose a downward departure based on age, mental condition, and physical condition or appearance.

First, Pursuant to § 5H1.1, age may be relevant in determining whether a departure is relevant. In this case while Kuntz was admittedly fifteen at the time of the offense, he was approximately a month shy of the age of sixteen and exhibited maturity in the commission of the offense.

5H1.1 considers risk factors that may contribute to involvement in the criminal justice system such as environment, adverse childhood experiences, substance abuse, lack of educational opportunities, and familial relationships. Throughout most of his life Kuntz has been raised by his grandparents who have provided a relatively stable environment for him. Despite their best efforts, Kuntz continued to engage in troubling behavior.

Here, Kuntz did not lack educational opportunities, and in fact school was a stable environment for Kuntz which he chose to disrupt. Kuntz was provided opportunities such as school, therapy, and services and yet chose a path of violent behavior. A downward departure for age under § 5H1.1 is not warranted should not apply.

Next, a downward departure for mental condition pursuant to § 5H1.3 is not warranted. Under § 5H1.3 mental and emotional conditions may be relevant "if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the

2

guidelines." In the present case, Kuntz certainly doesn't suffer from any mental condition to an unusual degree that would warrant this departure.

Finally, a downward departure for physical condition under § 5H1.4 is not warranted. Pursuant to § 5H1.4, physical condition may be relevant in determining whether a departure is warranted if the condition or appearance is present to an unusual degree and distinguishable from typical cases. "An extraordinary physical impairment may be a reason to depart downward."

In this case, Kuntz does not suffer from and extraordinary physical impairment. His size and weight are not atypical. He does not suffer from any deformity or debilitation, and his physical condition certainly didn't inhibit his involvement in committing a number of heinous and brutal crimes. In the present case, a departure is not warranted for physical condition.

As such, the departures should not apply in this case.

## UPWARD DEPARTURE AND/OR VARIANCE

The Plea Agreement entered into by the parties indicates the United States may seek a two-level upward departure pursuant to USSG § 5K2.8 for extreme conduct. (R. Doc. 93 – Plea Agreement, ¶ 13) The United States requests the Court so depart in this case.

The Guidelines do not always account for every factual circumstance which could arise in a given case. United States v. Austad, 519 F.3d 431, 435 (8th Cir. 2008). A district court may consider whether an in-Guidelines sentence fails to appropriately serve the objectives of sentencing. Id. (citing Kimbrough v. United States, 128 S.Ct. 558, 564 (2007)). If a sentence is outside the Guidelines range, an appellate court reviewing the

sentencing decision may consider the extent of the deviation but must give due deference to the district court's decision that the statutory sentencing factors, as a whole, justify the extent of the variance. Id. at 434 (citing Gall v. United States, 128 S.Ct. 586, 597 (2007)). A major sentencing variance should be supported by a more significant justification than a minor one; however, the justification need not be precisely proportionate. Id. at 435.

The Guidelines contemplate an upward departure in certain circumstances, including where there is infliction of injury to another person that is unusually cruel or degrading and not otherwise included in the Offense Level determined through application of Chapters Two and Three of the Guidelines Manual.

Specifically, Guidelines section 5K2.8 states:

"If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation."

In addition, when imposing sentence, the Court must not only consider the Guideline sentencing range, but is permitted to tailor the sentence in light of the other statutory concerns as well. See United States v. Wingate, 415 F.3d 885, 888 (8th Cir. 2005). Those other statutory factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and,

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,

(7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).

The instant offense conduct involves a group attack on Elijah Red Tomahawk (Tomahawk) which ultimately resulted in his death. Six juveniles, including the defendant, and two adults, were involved in the group attack of Tomahawk after encountering him in the early morning hours of May 4, 2023. During the attack, the group, including defendant, by aiding and abetting, punched, kicked, and struck Tomahawk with various weapons, to include a skateboard, machete, and a knife.

On May 4, 2023, the Defendant and others were walking in the early morning hours after consuming alcohol when they encountered Tomahawk walk past them. Once he was spotted and pointed out, the group chased and attacked Tomahawk. The group punched Tomahawk and once he fell to the ground they kicked and stomped on him. Deagen Running Bear struck Tomahawk in the head with a skateboard as did G.R. and as they were attacking him someone yelled "fucking die."

At some point Tomahawk was able to get up and run into a field where the assault continued. Members of the group continued to strike Tomahawk and he was struck with a knife several times. Deagen Running Bear struck Tomahawk with a knife or machete and Defendant hit Tomahawk in the neck with the machete. (PSR ¶ 17)

After the brutal assault, both Running Bear and the defendant went back to the body. Tomahawk was "coming to" so defendant "booted him" in the face making him fall back down. Id. At this point, Running Bear and defendant began dragging Tomahawk's body but he kept making noises. According to defendant, Running Bear then tried to slit his throat but was unable to, due to the dullness of the blade. Id. Running Bear then stabbed Tomahawk in the neck a couple of times and then handed the knife to defendant and told him to get his stripes up. Id. At this point law enforcement arrived and both Running Bear and defendant fled the scene.

Upon arrival at the scene, law enforcement observed large pools of blood and located a blood trail which led to the body of Tomahawk. The autopsy report concluded Tomahawk died due to multiple sharp force, blunt force, and chop injuries of the head and neck, including stab wounds to the jugular vein and carotid artery. (PSR ¶ 9) He also had broken teeth, bruises, contusions, abrasions, and laceration on his body.

The instant offense involved the brutal beating and death of Tomahawk. This was a serious, violent, and senseless assault involving extreme conduct wherein multiple weapons were utilized to include a machete. Furthermore, from defendant's own statement, Tomahawk appears to still be alive when he and Running Bear return to the body and defendant "boots" him in the face. (PSR ¶ 17) At this point, it appears Tomahawk is then stabbed multiple more times and is deceased when law enforcement arrives.

Defendant participated in the group attack and death of Tomahawk as a principal or as an aider and abettor to the offenses. Everyone who took part in punching, kicking or stomping on Tomahawk encouraged and aided others in the crime. Each person who

6

struck or assaulted Tomahawk helped incapacitate him so that others could deliver blows or kicks or continue to assault him which collectively resulted in his serious bodily injury and death. United States v. Felix, 996 F.2d 203 (8th Cir. 1993).  Thus, even if defendant did not deliver the final death blow, he aided and abetted others in doing so.

The facts in the PSR, along with the admitted-to facts within the Plea Agreement as well as the offense conduct supports a factual basis for this Court to depart upward in this case. In this case, due to the extreme conduct exhibited in the group attack on the victim which resulted in the brutal and heinous death of another, the United States believes a sentence consistent with an upward departure is a reasonable and appropriate sentence to impose.

As such, the United States respectfully requests the Court impose a sentence consistent with the terms outlined in the plea agreement and which will be more fully articulated at the sentencing hearing.

Dated this 10th day of January, 2025.

                MAC SCHNEIDER
                United States Attorney

By:   /s/ *Brandi Sasse Russell*
       BRANDI SASSE RUSSELL
       Assistant United States Attorney
       ND Bar ID 05661
       P.O. Box 699
       Bismarck, ND  58502-0699
       (701) 530-2420
       brandi.russell@usdoj.gov
       Attorney for United States